(24 Misc. Rep. 11.)

PEOPLE ex rel. FULLER v. COLER.[1]

(Supreme Court, Special Term, Kings County. June, 1898.)

1. GREATER NEW YORK CHARTER—CONSTRUCTION—MONEY RECEIVED FROM CITY OF BROOKLYN.

Under Greater New York Charter, § 1, continuing Kings county as a public corporation; and section 902, providing that the salary of the inspector of county buildings shall continue a charge on property taxable in that county,—where the salary of the inspector was included in the budget of the city of Brooklyn for 1897, and included in the taxes levied that year, and turned over to the city of New York under special provisions applying to that year, in the absence of statute to the contrary, the city of New York took the sum charged with the duty to apply it to the salary of such inspector.

2. SAME—APPROPRIATION OF MONEYS.

Greater New York Charter, § 10, providing that the moneys turned over by the city of Brooklyn to the city of New York at the time of their consolidation may be used for the expenses of Greater New York, as the board of estimate and apportionment may determine, and that said board shall apportion said funds to the various city departments, so that they shall be used as nearly as may be for the objects for which they were raised, does not include moneys raised by the city of Brooklyn for the purpose of paying the salary of the building inspector of Kings county, and the comptroller of Greater New York cannot withhold said salary on the ground that it was not appropriated to this purpose by the board of estimate and apportionment.

3. SAME—AUDIT OF CLAIMS FOR SALARIES.

Under Greater New York Charter, § 1583, providing that the board of estimate and apportionment shall audit all salaries of county officers, the board is not required to audit the monthly salaries of the county officers as they fall due, if the money to meet them is provided.

4. MANDAMUS TO COMPEL PAYMENT OF SALARY—PARTIES.

The comptroller of the city of New York is the proper officer against whom a writ of mandamus will run to compel payment of the salary of an officer of Kings county, the money for which had been raised and turned over to the city of New York prior to the consolidation of the cities of New York and Brooklyn.

Mandamus by the people, on the relation of Rudolph C. Fuller, against Bird S. Coler, as comptroller of the, city of New York. Granted.

Wm. C. Wallace, for relator.

William J. Carr, Asst. Corp. Counsel, for defendant.

JOHNSON, J. This being an application for a peremptory writ of mandamus, it must be determined on what stands admitted on the entire record. It is admitted that in September, 1895, the relator was appointed inspector of the construction, alteration, and repairs of county buildings in the county of Kings, at a salary of $2,000 a year, payable monthly; that chapter 1001 of the Laws of 1896 (entitled "An act relating to the office of inspector of construction, alteration and repairs of public buildings in the county of Kings") fixed his term of office at four years, and provided that his salary should not be less than $2,000 per year, and practically allowed the board of estimate of the city of Brooklyn to increase his salary, and also fixed the duties of that office; that in the same year the board of estimate of the city of Brooklyn fixed his salary at $5,000 per annum, at which

---

[1] Reversed on appeal. See 53 N. Y. Supp. 1090.

rate he was paid from that time up to the first of the present year; that in January, 1897, the common council of the city of Brooklyn, in fixing the budget for that year, included $5,000 for the salary of the relator, which sum was included in the taxes levied in that year; and that the relator has not vacated his office. The answer of the comptroller alleges that no money has been appropriated for the purpose of paying the salary, and that the relator has not presented a claim for audit, as required by the charter of the greater city.

The first, and, I apprehend, the main, question, is whether or not it is necessary for the board of estimate and apportionment to make an appropriation for this purpose. Under the plan provided by the charter of the greater city, the budget for each year is made up by the board of estimate and apportionment, and, in part at least, made up from time to time as necessity arises; the plan being for that board to authorize the raising of money for the various municipal purposes, by certificates of indebtedness, the gross amount thus authorized and represented by such certificates being the tax budget for that year; taxes not being raised, as has been the custom in the former city of Brooklyn, in advance, but practically at the end of each fiscal year. Of course, under such a system, there could be no money to pay a salary unless this board made an appropriation therefor, and the provision that no money shall be paid unless appropriated but expresses the necessities of the situation. That is the general, and, what is more to the purpose of this discussion, the continuing, rule of the greater city. But in this case the record shows that the money has already been raised for the purpose of this particular salary, and turned over to the city of New York, and it has been so turned over under temporary and special provisions applying only to this year and to the tax levies of the portions of the greater city that theretofore raised their taxes in advance of expenditure. It is to be noted that the relator was an officer of the county of Kings; that the county of Kings is continued as a public corporation (Greater New York Charter, § 1); and that the salary of the relator will continue to be a charge on property taxable in that county (Id. § 902). Under these circumstances it would seem to be clear, unless there is some statute to the contrary, that the city took that sum of $5,000, levied as above stated, charged with a duty to apply it to the purpose for which it was raised. People v. City of Brooklyn, 3 Hun, 596, affirmed 60 N. Y. 642.

Certainly, it will not be claimed that, as the matter has been stated above, it would be necessary for the board of estimate and apportionment to take those formal and important proceedings which are required where the proceeding is to raise the money by certificates of indebtedness, and to insert its amount in the ensuing tax levy. The defendant, however, meets this by a reference to section 10, Greater New York Charter, the effect of which, as he claims, is that the moneys which were turned over from the city of Brooklyn and county of Kings and the other municipal corporations consolidated with the former city of New York became a common fund, to be used and applied as a part of the general expenses of the greater city, practically merging in and with the amount raised by certificates of

indebtedness issued during the present year. The provisions of that section are that the money there referred to may be used for the expenses of the present city of New York, as the board of estimate and apportionment may determine, and that it shall be the duty of the board of estimate and apportionment to apportion the said funds to the various city departments as created by this act, so that such funds shall be used, as nearly as may be, for the objects for which they were raised. It is to be noted that the office of the relator was not created by that act, nor is it a department of the city, but a county office, not only in name, but in duties; and its salary is to remain a county charge. It results that, if this money is appropriated for the use of the departments created by the charter, it is not appropriated as nearly as may be for the objects for which it was raised, but it would be appropriated and used for quite another purpose. It should also be noted that the first lines of section 10 relate to the corporations consolidated with the city of New York, and the county of Kings is not a corporation so consolidated. And I find nothing in section 10 that is hostile to the inference above stated, and which appears to me to be indicated by its letter and its spirit. Hence it seems to me that the fair construction of section 10 limits it to city moneys, to the moneys flowing in from the corporations that were consolidated, and whose funds or revenues were made applicable to the corporation succeeding to them, and that it was not intended that the money raised for salaries in the county of Kings should go in with this common fund. Hence it seems to me that it was unnecessary that the board of estimate should appropriate the money, because the money was already there in the hands of the proper financial officers of the greater city, and subject, in law and equity, to being applied for the purpose for which it had been raised; that is, to meet this salary.

The other objection presented by the comptroller is that the relator has never presented his claim for audit. The allegation that the relator has demanded that the comptroller draw his warrant is not denied. I have not been referred to any section of the charter which requires that the relator should so present his claim. It would certainly seem that where a person holds office under a state law, if any audit of his bill is required, the auditing officers should perform their duty without being requested by him. I am not aware that it has ever been the custom in this or any city that persons holding offices under a state law or the constitution are required every month to present their claim for audit. If that were so, the judges of the court, the mayor, the comptroller himself, would be required to present the same claim month after month.

It is suggested that application should be made to the board of estimate and apportionment to audit the claim. That point is very narrow and very technical. The comptroller is a member of that board, and, if the city owes the money, it is easy to have that audit supplied. The statement of the court of appeals in People v. Supervisor, 154 N. Y. 381, 48 N. E. 813, that the court will not assume that public officers will fail to do their duty, seems to me to have just application to this case. Perhaps, however, an answer more direct,

though narrow and technical, would be that the comptroller's affidavit, stating that the relator has failed to present his claim, and that the board of estimate and apportionment has failed to appropriate, omits to state that that board has failed to audit the claim.

But I do not think that such an audit as is now referred to was required of that board. The claim that an audit was necessary is made under section 1583, Greater New York Charter, and that section in terms says that the board of estimate and apportionment shall audit all county charges and expenses and salaries of county officers. But it should be noted that that is a continuing duty, and the statute is intended to apply to the situation which will exist in all the subsequent years when the board of estimate will be compelled to make an appropriation before there will be any money to pay. The provisions of section 1583 must be read in connection with that continuing duty and obligation to provide the money, and not only to provide it, but to provide it in such a manner that the act of providing it practically makes a valid budget. If this were the year 1899, and the board of estimate and apportionment had done precisely what has already been done in this case as towards this salary,—had raised $5,000 for it, or had raised a proper amount, say, for stationery for the courts,— would not their duty cease at that point? Can it be said that whenever a bill comes in for stationery, or a monthly salary falls due, that each particular bill is to go before this great board, including all the prominent officers of the city, and that they are to take it up, item by item, and audit it in the way required of an ordinary auditor? Id. § 195, provides for an auditor of accounts; and the court understands that that officer, unlike the auditor of the former city of Brooklyn, is a subordinate of the comptroller, as that section seems clearly to imply. In the index to the Greater New York Charter there is no reference to any auditor, nor does the word "auditor" appear, except as the board of education are authorized to appoint auditors for their accounts, and as provided in section 195. Hence, if this is a valid claim, and there is any duty to audit, it is the business of the comptroller, through his subordinate, the auditor of accounts.

In making this decision, I am aided by the intelligent and careful study made by counsel, investigating the provisions of the elaborate charter of the greater city. It may be that some provision directly relating to this question has been entirely overlooked. I have been impressed with the number of applications that have come before me in which elaborate arguments and briefs have been submitted as to whether or not the officer proceeded against is the one from whom the precise next needful step or movement is required. When all such officers are officers of the same corporation, it seems unfortunate that the court should be so often asked to distinguish as to which particular agent of the corporation shall be subjected to its compulsion to perform a duty that the corporation certainly owes. At least, the court should not be astute to find some other officer from whom some trivial or inconsequential step is now due. People v. Supervisor, 154 N. Y. 381, 48 N. E. 813. But I cannot see against what other officer a similar writ would run. I hold that the money is there sufficiently devoted to this purpose. I do not think the board of

estimate and apportionment is required to audit (as was the auditor
of the former city of Brooklyn, or the auditor of accounts) each month-
ly salary, if the money to meet it is provided. Indeed, I cannot con-
ceive that the corporation counsel or the comptroller—both members
of that board—seriously so insist, or would so admit, if the proceeding
were taken against that board, as has been suggested. I apprehend
the auditor of accounts is not a public officer against whom the writ
of mandamus would run, and, if he is, he certainly is a subordinate
of the comptroller here defending. I am therefore of the opinion
that the order prayed for should be granted.

Order granted.